UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------ x
DUANE READE, INC.,                   :
                                     :
              Plaintiff,             :        07 Civ. 574 (JSR)
                                     :
              -v-                    :        OPINION AND ORDER
                                     :
ST. PAUL FIRE AND MARINE INSURANCE   :
CO.,                                 :
                                     :
              Defendant.             :
------------------------------------ x

JED S. RAKOFF, U.S.D.J.

        By Order dated July 25, 2007, the Court granted the motion of

defendant St. Paul Fire and Marine Insurance Company ("St. Paul") for

summary judgment and denied the motion of plaintiff Duane Reade, Inc.

("Duane Reade") for summary judgment.  This Opinion and Order states

the reasons for those rulings, deals with other outstanding issues,[1]

and directs the entry of final judgment.

        This is the second case before the Court concerning an

insurance policy (the "Policy") issued by St. Paul covering, inter

alia, a Duane Reade drugstore located in the World Trade Center (the

"WTC Store") that was destroyed during the terrorist attacks of

September 11, 2001.  See affidavit of James W.B. Benkard sworn to

April 30, 2007 ("Benkard. Aff."), Ex. C.  In 2002, St. Paul initially

paid Duane Reade $9,863,853 for losses related to the destruction of

---

[1]In issuing its preliminary Order, the Court overlooked the
fact that the plaintiff, by seeking confirmation of the entire
award of the appraisal panel, thereby effectively also sought
confirmation of that panel's award relating to Duane Reade stores
outside the World Trade Center complex.  As to that portion of
the award, as discussed below, the Court essentially grants Duane
Reade's motion for summary judgment and denies St. Paul's
corresponding motion.

the WTC Store.  <u>See</u> Defendant's 56.1 Statement ("Def. 56.1") ¶ 3;
Plaintiff's Response 56.1 ("Pl. Resp. 56.1") ¶ 3.  This was prior to
the loss appraisal mandated by the Policy.  A lawsuit, 02 Civ. 7676,
was then commenced to determine certain questions concerning scope of
coverage and to determine whether St. Paul's payment satisfied in
full its obligation under the Policy, thereby rendering the appraisal
unnecessary.

The Court issued a Memorandum Order in the prior action on
August 20, 2003, construing, <u>inter</u> <u>alia</u>, the scope of coverage under
the Policy's "business interruption" provision.  <u>See</u> <u>Duane Reade,</u>
<u>Inc. v. St. Paul Fire & Marine Ins. Co.</u>, 279 F.Supp.2d 235 (S.D.N.Y.
2003).  Among other things, that Memorandum Order referred to the
time limits placed on the business interruption coverage by the
"Restoration Period" clause, which provides, that:

> The measure of recovery or period of indemnity shall not
> exceed such length of time as would be required with the
> exercise of due diligence and dispatch to rebuild, repair,
> or replace such property that has been destroyed or
> damaged, and shall commence with the date of such
> destruction or damage and shall not be limited by the date
> of expiration of this policy.

Policy (Benkard Aff., Ex. C) at 17-18.  The Policy, however, also
includes an Extended Recovery Period provision, as follows:

> This policy is extended to cover the Actual Loss Sustained
> by the Assured resulting from interruption of business for
> such additional length of time as would be required with
> the exercise of due diligence and dispatch to restore the
> Assured's business to the condition that would have existed
> had no loss occurred, commencing with the latter of the
> following dates:

a) the date on which liability of the Company of loss resulting from interruption of business would terminate if the clause had not been attached to this policy or

b) the date on which repair, replacement, or rebuilding of such part of the property as has been damaged is actually replaced; but in no event for more than twelve months from said later commencement date.

Id. at 21.

In the Memorandum Order of August 20, 2003, the Court held that the Restoration Period clause, with its subjunctive language ("as would be required"), provides coverage, in the context of the destruction of the World Trade Center, for a "hypothetical or constructive" period for rebuilding:

[W]hat is to be hypothesized is the time it would take to rebuild, repair, or replace the WTC store itself, not the entire complex that once surrounded it. . . . Once Duane Reade could resume functionally equivalent operations in the location where its WTC store once stood, the Restoration Period would be at an end. . . . Any losses continuing beyond that point would be addressed by the "Extended Recovery Period" provision in the Policy . . . not by the Restoration Period clause.

Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 279 F.Supp.2d at 239. On June 22, 2005, the Second Circuit modified and affirmed this determination, upholding the finding that the Restoration Period depends on a hypothetical or constructive period of time but altering the definition to eliminate the requirement of functionally equivalent "operations" and the requirement that the replaced store be "where [the] WTC store once stood."  Instead, the Court of Appeals measured the Restoration Period by the hypothetical time that it would take Duane Reade to rebuild, repair or replace "the functional

3

equivalent of the store Duane Reade lost." <u>See</u> <u>Duane Reade, Inc. v.</u>
<u>St. Paul Fire and Marine Ins. Co.</u>, 411 F.3d 384, 392-399 (2d Cir.
2005).  This was because "any discrepancies between the new building
and the WTC [Store] in terms of benefits and advantages are
exclusively accounted for under [another clause,] the Leasehold
Interest clause." <u>Id.</u> at 398.  As for losses that continued beyond
the Restoration Period, the Second Circuit agreed with the District
Court that they would be covered, if at all, "by the 'Extended
Recovery Period' provision in the Policy, not by the Restoration
Period clause." <u>Id.</u> at 399.

Meanwhile, the parties proceeded with appraisal, as required
under the Policy.  Following the Second Circuit's decision, the
appraisal panel, by letter dated June 5, 2006 (the "Appraisal
Award"), made the following determinations:

> Duane Reade's Business Interruption loss for [the WTC
> Store] is $9,728,052 plus the Extended Period loss of
> $4,300,561 for a total of $14,028,613 based on a twenty-
> four (24) month Restoration Period and an Extended Period
> of twelve (12) months.  In addition, interest on the award
> through May 2006 amounts to $2,395,045 for [the WTC Store]
> and $608,406 for the Extended Period loss.  Offsetting
> these amounts are the advance paid by St. Paul of
> $9,863,853 and interest thereon through May 2006 of
> $2,668,065.  Consequently the net amount due to Duane Reade
> related to the [WTC Store] Business Interruption loss,
> including the Extended Period loss is $4,500,146.

Benkard Aff., Ex. EE ("Appraisal Award") at 1-2.  The panel also
calculated that St. Paul owed Duane Reade a total of $1,131,821 in
"extended period" losses and interest thereon involving 23 other
stores. <u>Id.</u> at 2.

4

Duane Reade then brought the instant action seeking (i) to
confirm the Appraisal Award, (ii) to hold St. Paul liable for breach
of contract for failing to pay the $5,631,967 due under the award,
and (iii) seeking, by way of declaratory judgment and/or breach of
contract, to hold St. Paul liable for still further sums allegedly
due under the "Leasehold Interest" provision referenced in the Second
Circuit opinion and under two other Policy provisions, the
"Attraction Properties" and the "Contingent Business Interruption"
provisions (which were not bases on which Duane Reade had sought
recovery in the prior action).  See Complaint.

First, the Court confirms the portion of the appraisal award
relating to the business interruption loss but denies the portion
relating to the extended period loss.  As the Second Circuit
emphasized in its prior opinion, "the scope of coverage provided by
an insurance policy is a purely legal issue that cannot be determined
by an appraisal, which is limited to factual disputes over the amount
of loss for which an insurer is liable."  Duane Reade, Inc. v. St.
Paul Fire and Marine Ins. Co., 411 F.3d at 389.  See also Indian
Chef, Inc. v. Fire and Cas. Ins. Co. of Connecticut, 2003 WL 329054,
at *3 (S.D.N.Y. Feb. 13, 2003) ("Appraisers are not empowered to
address disputes arising from questions of coverage or liability.").
Although both this Court and the Second Circuit stated that losses
continuing past the Restoration Period "would be addressed by" the
Policy's Extended Recovery Period provision, neither opinion held --
or even suggested -- that Duane Reade should *automatically* be

5

entitled to recover under the Extended Recovery Period provision.  On
the face of the Policy, Duane Reade is not entitled to claim Extended
Recovery Period coverage until after the "repair, replacement, or
rebuilding of such part of the property as has been damaged is
*actually replaced*."  Policy (Benkard Aff., Ex. C) at 21 (emphasis
added).  Duane Reade has not actually replaced the WTC Store and
therefore does not qualify for Extended Recovery Period losses at
this time.

Contrary to Duane Reade's assertion, the fact that the
Restoration Period relates to a hypothetical period of time does not
dictate that the Extended Recovery Period likewise must be defined by
reference to the hypothetical point at which the property reasonably
could be replaced.  Whereas the Restoration Period provision and the
Business Interruption provision that it modifies are both phrased in
the subjunctive (covering the period "as would be required" for
restoration) and thereby guarantee recovery whether or not the
assured chooses to replace the lost property, the Extended Recovery
Period provision contains a requirement of actual replacement.  This
plain language must be given its plain meaning.  See, e.g.,
Metropolitan Life Ins. Co. v. RJR Nabisco, Inc., 906 F.2d 884, 889
(2d Cir. 1990).[2]

_____

[2] Duane Reade's suggestion that the requirement of actual
replacement should be interpreted to be satisfied when the store
could have been replaced would also render the second prong of
the Extended Recovery Period provision meaningless.  Under Duane
Reade's reading, prong (b) would automatically be satisfied
whenever prong (a) were satisfied.  In contrast, by enforcing the

Thus, the Court finds that the panel erred to the extent that it awarded $4,300,561 in "Extended Period" loss on the WTC Store. Appraisal Award (Benkard Aff., Ex. EE) at 1-2. Deducting the award of Extended Period loss from the appraisal calculation, the Court finds that Duane Reade's Business Interruption loss for the WTC Store should be $9,728,052. St. Paul's advance payment to Duane Reade of $9,863,853 exceeded this figure by $135,801, which pursuant to one of St. Paul's counterclaims, is due to be remitted, with interest, to St. Paul. St. Paul does, however, owe Duane Reade the $862,615 plus interest that the appraisal panel found was due for Extended Period losses on 23 other Duane Reade stores that were affected by the events of September 11, 2001 and on which the damaged property was actually replaced. Offsetting this loss amount by the overpayment described above, the Court finds that St. Paul owes Duane Reade $726,814 plus prejudgment interest on that amount (at the interest rates used by the appraisal panel). As so modified, the Court confirms the Appraisal Award.

Second, with respect to Duane Reade's other claims, which invoke Policy provisions not addressed in the prior action and seek

---

requirement for actual replacement, the Court has given meaning to both requirements. For example, if Duane Reade were to delay and actually take more than the time that reasonably would be necessary to replace a protected property, prong (a) would be satisfied (and coverage under the Restoration Period would terminate) when the property could have actually been replaced, and prong (b) would be satisfied (and coverage would recommence under the Extended Recovery Period) when Duane Reade did actually replace the property.

relief not included in the Appraisal Award, the Court finds that such claims are barred by the doctrine of res judicata because they could have been, and rightfully should have been, brought in the prior action.  "To prove that a claim is precluded under th[e] doctrine" of res judicata, "'a party must show that (1) the previous action involved an adjudication on the merits; (2) the previous action involved the [parties] or those in privity with them; [and] (3) the claims asserted in the subsequent action were, or could have been, raised in the prior action.'"  Pike v. Freeman, 266 F.3d 78, 91 (2d Cir. 2001) (quoting Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284-85 (2d Cir. 2000)); see Federated Dep't Stores, Inc. v. Moitie, 452 U.S. 394, 398 (1981) ("A final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action.").  The claims brought in this action satisfy all three of those requirements.  Indeed, Duane Reade here seeks to invoke new legal theories to recover the exact same amounts it sought by way of declaration in the prior action.  See affidavit of Steven McNutt in support of St. Paul's motion for summary judgment ("McNutt Aff."), Ex. II.

Plaintiff nonetheless contends that the doctrine of res judicata should not apply because the prior action initially took the form of a request for declaratory judgment.  See Harborside Refrigerated Services, Inc. v. Vogel, 959 F.2d 368, 372-73 (2d Cir. 1992) (res judicata ordinarily attaches to actions for declaratory

relief only with respect to "the precise issue before the court");

Lynch v. Bailey, 279 A.D. 650 (1st Dept. 1951).  The rationale for

this exception to ordinary principles of res judicata, as articulated

in Harborside, is, however, inapplicable here.  As stated in

Harborside:

> A common purpose behind both declaratory judgment
> availability and the doctrine of res judicata is litigation
> reduction and the conservation of judicial resources.
> Declaratory relief enables federal courts to clarify the
> legal relationships of parties before they have been
> disturbed thereby tending towards avoidance of full-blown
> litigation. . . . Similarly, res judicata operates to
> relieve parties of the cost and vexation of multiple
> lawsuits, conserve judicial resources, and, by preventing
> inconsistent decisions, encourage reliance on adjudication.
> . . . A requirement that parties to an action for
> declaratory relief bring all possible claims and
> counterclaims at that juncture or else be barred by res
> judicata, would undermine efficient adjudication and
> optimal use of judicial resources. Actions for declaratory
> relief would rapidly develop into full-scale legal
> contests, and the option of a preliminary suit limited to
> a declaration of the rights of the parties would evaporate.
> To permit res judicata to be applied in such a case beyond
> the precise issue before the court would subvert the very
> interests in judicial economy that the doctrine was
> designed to serve.

Harborside Refrigerated Services, Inc., 959 F.2d at 373 (internal

citations and quotation marks omitted).  Here, however, the prior

action cannot be characterized as anything other than a "full-scale

legal contest" concerning St. Paul's obligations under the Policy.

In the prior action, plaintiff presented the strongest arguments it

had for recovering the sums it sought.  The interest of judicial

economy is in no way served by permitting plaintiff to divide its

9

attempts to determine the scope of coverage into multiple actions, each testing out a different theory of recovery.

Nor does the prior action fit within the doctrinal confines of the declaratory judgment exception.  As the Second Circuit explained in Harborside, the exception to res judicata recognized under both Federal and New York law applies when "the prior action involved *only* a request for declaratory relief."  Harborside Refrigerated Services, Inc., 959 F.2d at 372 (emphasis added).  In addition to the request for declaratory relief and to plaintiff's breach of contract claims (which were dismissed without prejudice as unripe), the prior action involved defendant St. Paul's claims for, inter alia, breach of contract, which were dismissed with prejudice.  See Duane Reade v. St. Paul Fire and Marine Ins. Co., 279 F. Supp. 2d 235.  The presence of these claims seeking something other than declaratory relief, which the Court addressed on the merits, disqualifies this case for the declaratory judgment exception.  See Gianone v. York Tape & Label, Inc., 2007 WL 1521500 (E.D.N.Y May 23, 2007). Indeed, once defendant brought its claims for breach of contract, plaintiff was required under Fed. R. Civ. P. 13 to bring any claims it had against St. Paul "aris[ing] out of the transaction or occurrence that is the subject matter" of St. Paul's claims.[3]

---

[3]In the prior action, plaintiff did, if barely, raise its claims to damages arising from the terrorist attacks of September 11, 2001 at stores other than the WTC Store, see Duane Reade, Inc. v. St. Paul Fire & Marine Ins. Co., 279 F.Supp.2d at 238, n 3., and, as noted, the appraisal panel rendered an award on these claims.  See Appraisal Award (Benkard Aff., Ex. EE) at 2.

Furthermore, even assuming <u>arguendo</u> this case did fit within the declaratory judgment exception, plaintiff's claims would nonetheless be barred by res judicata because the Complaint brings claims that were the very subject of the prior litigation.  Even in the context of a pure declaratory judgment action, New York courts will not allow a party to retry issues that formed the subject matter of a prior declaratory judgment action.  <u>See, e.g.</u> <u>Beck v. Eastern Mut. Ins. Co.</u>, 744 N.Y.S.2d 57 (3d Dept. 2002) ("plaintiffs' second declaratory judgment action is precluded because plaintiffs' claim . . . was the subject matter of the first declaratory judgment action"); <u>see</u> <u>also</u> <u>Harborside Refrigerated Services, Inc.</u>, 959 F.2d at 372 ("Under this exception, the preclusive effect of the declaratory judgment is limited to the subject matter of the declaratory relief sought.")  Put another way, principles of collateral estoppel preclude plaintiff's claims.  <u>See</u> <u>Umhey v. County of Orange, N.Y.</u>,  957 F.Supp. 525, 529 (S.D.N.Y. 1997) ("collateral estoppel does apply to prior declaratory judgments").

Plaintiff attempts to narrowly circumscribe the prior proceeding by arguing that the prior action, which considered the business interruption provision as the primary source of recovery, did not address the issues raised in this action invoking the "Leasehold Interest," "Contingent Business Interruption," or "Attraction Properties" provisions.  As all parties understood at the time, the prior action addressed the overall issue of scope of coverage under the Policy.  The Court denied defendant's motion to compel appraisal

11

prior to resolution of the prior action on the ground that appraisal
could not proceed until the Court determined the scope of coverage
under the Policy.  See Duane Reade, Inc. v. St. Paul Fire & Marine
Ins. Co., 261 F.Supp.2d at 296 ("Given the dismissal of the breach of
contract claims and the reduction of the case to claims for
declaratory judgment regarding scope of coverage and related issues,
this becomes such a case where appraisal is premature.")  In a letter
to the Court dated June 20, 2003, Duane Reade stated that it
"interpreted this ruling to contain the implicit conclusion that
appraisal would eventually be the appropriate vehicle for an
assessment of Duane Reade's contractual damages after all the
coverage issues had been decided."  McNutt Aff., Ex. J at 2.  It was
only when the Second Circuit referenced the Leasehold Interest
provision that plaintiff reconsidered its prior tactic of claiming
coverage under the Policy for losses to the WTC Store derived
primarily from the Business Interruption provision.  In short, it is
not the issue that has changed from the prior action to this case --
both actions address Duane Reade's entitlements under the Policy for
losses arising from the terrorist attacks of September 11, 2001 --
but rather Duane Reade's strategy in approaching that issue.  Neither
the doctrine of res judicata nor the doctrine of collateral estoppel
allows plaintiff to bring countless actions, one at a time, until
plaintiff happens upon a legal theory that achieves the desired
result.  Principles of finality and judicial efficiency require

plaintiff to have raised all of its issues concerning scope of coverage in its initial suit.

Third, while neither party has formally moved for summary judgment on the counterclaims asserted in defendant's Answer, the foregoing determinations effectively dispose of the counterclaims.

Accordingly, the Clerk of the Court is directed to enter final judgment confirming the Appraisal Award as here modified and holding St. Paul liable to Duane Reade in the sum of $726,814 plus prejudgment interest calculated according to the same rates used by the appraisal panel.[4]

SO ORDERED.

_____
JED S. RAKOFF, U.S.D.J.

Dated:   New York, New York
         August 28, 2007

---

[4]The parties should, if possible, reach agreement on this calculation and submit an appropriate stipulation.

13